UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAYS INNS WORLDWIDE, INC.,** | Civ. No. 2:11-cv-01546 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **MAY & YOUNG HOTEL-NEW ORLEANS, LLC,** *et al.*, | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.**:

Plaintiff Days Inns Worldwide, Inc. ("DIW") filed this action against Defendants May & Young Hotel-New Orleans, LLC ("May & Young") and Shenquan Yang ("Yang") (collectively, "Defendants"). The Complaint alleged that May & Young breached a franchise licensing agreement with DIW ("License Agreement"), and that Yang breached an agreement to guarantee May & Young's obligations under the License Agreement (the "Guaranty"). Defendants filed counterclaims for tortious interference with prospective economic advantage, breach of contract, and fraud, but decided not to pursue these counterclaims at trial.

The Court conducted a one-day bench trial on December 4, 2012. Defendant Yang failed to appear at trial.[1] Although defense counsel was present at the trial, the defense was unable to present any evidence in light of Yang's failure to appear as a witness. Plaintiff submitted proposed findings of fact and conclusions of law on December 13, 2012. After carefully considering the record evidence and the submissions, the Court finds that May & Young breached the License Agreement, and that Yang breached the Guaranty. The Court further finds that DIW is entitled to damages in the amount of $508,799.79, plus the costs incurred in this action in an amount to be determined. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

---

[1] Defense counsel did not request, and the Court did not grant, an adjournment of the trial, as it appeared likely that Yang would never appear for trial.

## I. JURISDICTION, VENUE, AND APPLICABLE LAW

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and all Defendants are citizens of different states and the amount in controversy exceeds $75,000. This Court has personal jurisdiction over Defendant May & Young by virtue of section 17.6.3 of the License Agreement. This Court has personal jurisdiction over Yang pursuant to the Guaranty, in which Yang agreed that he was personally bound by section 17 of the License Agreement. Venue is proper in this District pursuant to section 17.6.3 of the License Agreement, as that provision contains an express waiver by May & Young of any objection to venue in this District.

## II. FINDINGS OF FACT[2]

### A. The Parties

DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Final Pretrial Order ("FPO") (ECF No. 33), Stipulated Facts at 1). DIW owns and operates a national guest lodging facility franchise system and is widely known as a provider of guest lodging facility services. (FPO, Stipulated Facts at 2).

May & Young is a limited liability company organized and existing under the laws of the State of Louisiana with its principal place of business in Harvey, Louisiana. (FPO, Stipulated Facts at 3). Yang is a citizen of the State of California residing at 10542 Gaylemont Lane, San Diego, California 92310. (FPO, Stipulated Facts at 4). Yang is the principal and only constituent member of May & Young. *Id.*

### B. The Agreements between the Parties

On or about August 16, 2007, DIW entered the License Agreement with May & Young for the operation of a 106-room guest lodging facility located at 3750 Westbank Expressway, Harvey, Louisiana 70058 (the "Facility"). (FPO, Stipulated Facts at 8; Exhibit P-1). On or about August 16, 2007, DIW entered into a Satellite Connectivity Services Addendum (the "Satellite Addendum") with May & Young. (FPO, Stipulated Facts at 6; Exhibit P-2). Effective as of the date of the License Agreement, Yang provided DIW with the Guaranty of May & Young's obligations under the License Agreement. (FPO, Stipulated Facts at 7; Exhibit P-3).

Pursuant to section 5 of the License Agreement, May & Young was obligated to operate a Days Inn® guest lodging facility for a 15-year term. (FPO, Stipulated Facts at 9; Exhibit P-1). Pursuant to section 7, section 18, and Schedule C of the License Agreement, May & Young was required to make certain periodic payments to DIW for royalties, service assessments, mandatory marketing program charges, internet booking fees, reservation system charges, guest services assessments, taxes, interest, relicense fee, and other fees (collectively, "Recurring Fees"). (FPO, Stipulated Facts at 10; Exhibit P-

---

[2] The Court's findings of fact are not limited to those in this section, but also include any factual determinations that appear elsewhere in this Opinion.

1). Pursuant to section 7.3 of the License Agreement, May & Young agreed that interest "on any past due amount [is] payable to [DIW] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until amount is paid." (FPO, Stipulated Facts at 11; Exhibit P-1).

Pursuant to section 3.8 of the License Agreement, May & Young was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by May & Young at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW. (FPO, Stipulated Facts at 12; Exhibit P-1). Also pursuant to section 3.8 of the License Agreement, May & Young agreed to maintain accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility. Pursuant to sections 3.8 and 4.8 of the License Agreement, May & Young agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts. (FPO, Stipulated Facts at 13; Exhibit P-1). Pursuant to section 3.9 of the License Agreement, DIW has the unlimited right to conduct unannounced quality assurance inspections of the Facility to determine whether the Facility was in compliance with DIW's quality assurance requirements. (FPO, Stipulated Facts at 14; Exhibit P-1).

Pursuant to section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to May & Young, if May & Young (a) discontinued operating the Facility as a Days Inn® guest lodging facility establishment, or (b) lost possession or the right to possession of the Facility. (FPO, Stipulated Facts at 15; Exhibit P-1). Pursuant to section 12.1 of the License Agreement, May & Young agreed that, in the event of a termination of the License Agreement pursuant to Section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the License Agreement. (FPO, Stipulated Facts at 16; Exhibit P-1). Pursuant to section 17.4 of the License Agreement, May & Young agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement." (FPO, Stipulated Facts at 17; Exhibit P-1).

Pursuant to the terms of the Guaranty, Yang agreed that, upon a default under the License Agreement, he would "immediately make each payment and perform or cause [May & Young] to perform each unpaid or unperformed obligation of the Licensee under the [License] Agreement." (FPO, Stipulated Facts at 18; Exhibit P-3). Pursuant to the Guaranty, Yang agreed to pay the costs incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement, including reasonable attorneys' fees. (FPO, Stipulated Facts at 19; Exhibit P-3).

### C. Defendants' Defaults and Termination of the License Agreement

By letter dated February 21, 2008, DIW advised May & Young that it was in default of its quality assurance obligations under the License Agreement. (FPO, Stipulated Facts at 20; Exhibit P-9). DIW further advised May & Young that, if the

default was not cured, the Facility's access to DIW's central reservation system would be suspended, certain special stipulations would expire automatically, and the License Agreement would be subject to termination. *Id.*

By letter dated November 5, 2008, DIW advised May & Young that it remained in default of its quality assurance obligations under the License Agreement. (FPO, Stipulated Facts at 21; Exhibit P-10). DIW further advised May & Young that, if the default was not cured, the Facility's access to DIW's central reservation system would be suspended, certain special stipulations would expire automatically, and the License Agreement would be subject to termination. *Id.*

By letter dated March 3, 2009, DIW advised May & Young that it remained in default of its quality assurance obligations under the License Agreement. (FPO, Stipulated Facts at 22; Exhibit P-11). DIW further advised May & Young that, if the default was not cured, the Facility's access to DIW's central reservation system would be suspended, certain special stipulations would expire automatically, and the License Agreement would be subject to termination. *Id.*

By letter dated May 19, 2009, DIW advised May & Young that it remained in default of its quality assurance obligations under the License Agreement. (FPO, Stipulated Facts at 23; Exhibit P-12). DIW further advised May & Young that, if the default was not cured, the Facility's access to DIW's central reservation system would be suspended, certain special stipulations would expire automatically, and the License Agreement would be subject to termination. *Id.*

By letter dated July 27, 2009, DIW advised May & Young that it remained in default of its quality assurance obligations under the License Agreement, and that the License Agreement remained subject to termination. (FPO, Stipulated Facts at 24; Exhibit P-13).

By letter dated September 30, 2009, DIW advised May & Young that it was in default of its financial obligations under the License Agreement due to May & Young's failure to pay Recurring Fees in the amount of $72,650.64, and that the License Agreement was subject to termination. (FPO, Stipulated Facts at 25; Exhibit P-15).

By letter dated November 3, 2009, DIW advised May & Young that it remained in default of its quality assurance obligations under the License Agreement, and that the License Agreement remained subject to termination. (FPO, Stipulated Facts at 26; Exhibit P-16).

By letter dated December 30, 2009, DIW advised May & Young that it remained in default of its quality assurance obligations under the License Agreement, and that the License Agreement remained subject to termination. (FPO, Stipulated Facts at 27; Exhibit P-18).

Despite DIW's notices, Defendants failed to cure the quality assurance or financial defaults under the License Agreement. (FPO, Stipulated Facts at 28).

On or about June 23, 2010, 2010, May & Young ceased operating the Facility as a Days Inn® guest lodging facility.  (FPO, Stipulated Facts at 29).  By letter dated September 9, 2010, DIW acknowledged May & Young's termination of the License Agreement, effective June 23, 2010, and demanded that Defendants pay liquidated damages together with all outstanding Recurring Fees due at the time of termination.  (FPO, Stipulated Facts at 30; Exhibit P-19).

### III.  CONCLUSIONS OF LAW

May & Young breached the License Agreement by virtue of (1) its quality assurance defaults under the License Agreement, (2) its financial defaults under the License Agreement, and (3) its termination of the License Agreement.  Yang breached the Guaranty by virtue of his failure to make each payment due from May & Young.  As a result of Defendants' breaches, DIW is entitled to damages comprised of Recurring Fees, liquidated damages, and prejudgment interest.  DIW also is entitled to an award of attorneys' fees and costs of suit pursuant to section 17.4 of the License Agreement.

### IV.  DAMAGES

Defendants owe DIW $196,453.29 in Recurring Fees.  Consistent with the License Agreement, Recurring Fees were calculated based on data reported by or collected from Defendants.  (FPO, Stipulated Facts at 31; Exhibit P-20).  As to the period of April 11, 2010 through June 23, 2010, during which such data was not available, Recurring Fees were calculated based on amounts estimated by DIW using historical revenue data for the Facility and revenue earned at a similar facility.  *Id.*  Defendants failed to pay Recurring Fees to DIW in the principal amount of $125,890.30.  *Id.*  As of October 31, 2011, Defendants owed Recurring Fees to DIW, together with prejudgment interest, in the amount of $171,745.45.  *Id.*  Defendants owe additional interest for the period from November 1, 2011 through December 4, 2012 (the date of trial) in the amount of $24,707.84.   (FPO, Stipulated Facts at 11; Exhibit P-1).

Defendants owe DIW $312,346.50 in liquidated damages.  Section 12.1 of the License Agreement provides that "liquidated damages will not be less than the product of $2,000 multiplied by the number of guest rooms you are then authorized to operate under Schedule B."  Pursuant to Section 12.1, DIW is owed $212,000.00 ($2,000.00 multiplied by 106 guest rooms).  (FPO, Stipulated Facts at 16; Exhibit P-1).  Section 13(c) of the Satellite Addendum provides a flat $2,500.00 fee for liquidated damages, for a total of $214,500.00 in liquidated damages due to DIW.  (FPO, Stipulated Facts at 6; Exhibit P-2 at §13(c)).  DIW is also entitled to $97,846.50 in interest on its liquidated damages, which was calculated at the legal rate of interest of 1.5% per month (or 18% per year) from June 23, 2010 through and including December 4, 2012.  (FPO, Stipulated Facts at 11; Exhibit P-1 at §7.3).

      Adding together Recurring Fees and liquidated damages, Defendants owe DIW a grand total of $508,799.79.  DIW is also entitled to costs and expenses incurred in this action, including reasonable attorneys' fees and costs, in an amount to be determined. (FPO, Stipulated Facts at 11; Exhibit P-1 at §17.4).  An appropriate order and judgment follows.

                                        /s/William J. Martini
                               **WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 19, 2012**